# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **ALMA GOMEZ** and **JOSE N. GOMEZ**, | Case No.: 3:11-cv-01253-SI |
| Plaintiffs, | |
| v. | **OPINION AND ORDER** |
| **BANK OF AMERICA, N.A.**, successor by merger with **BAC HOME LOANS SERVICING, LP**; **RECONTRUST COMPANY, N.A.**; and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.**, | |
| Defendants. | |

John P. Bowles
Richard M. Fernandez
BOWLES FERNANDEZ LAW LLC
5200 SW Meadows Rd., Ste. 150
Lake Oswego, OR 97035

    Of Attorneys for Plaintiffs

Dominic G. Colletta
Pilar C. French
LANE POWELL, PC
601 SW Second Ave., Ste. 2100
Portland, OR 97204-3158

    Of Attorneys for Defendants

Robert J. Pratte
FULBRIGHT & JAWORSKI LLP
80 South Eighth Street
2100 IDS Center
Minneapolis, MN 55402

    Of Attorneys for Defendant Mortgage Electronic Registration System, Inc.

**SIMON, District Judge.**

Plaintiffs Alma and Jose Gomez ("Plaintiffs") filed a complaint in Washington County Circuit Court seeking injunctive and declaratory relief to stop an impending foreclosure. Dkt. 1, 7. Defendants Bank of America, N.A., successor by merger with BAC Home Loans Servicing, LP ("BOA"), ReconTrust Company, N.A. ("RTC"), and Mortgage Electronic Registration Systems, Inc. ("MERS") removed the case to this court, Dkt. 1, and have moved pursuant to dismiss the complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Dkt. 9. As more fully described in the conclusion, Defendants' motion to dismiss (Dkt. 9) is GRANTED IN PART AND DENIED IN PART, and Plaintiffs may file a third amended complaint within 14 days from the date of this order if Plaintiffs believe that a further amendment will cure the deficiencies identified in this Opinion and Order.

## BACKGROUND

The allegations in Plaintiffs' complaint are "taken as true and construed in the light most favorable to" Plaintiffs. *American Family Ass'n, Inc. v. City & County of S.F.*, 277 F.3d 1114, 1120 (9th Cir. 2002). According to the complaint, in October 2007, Plaintiffs obtained a loan, secured by a trust deed, from United Mortgage Services ("UMS") to purchase property in Aloha, Oregon. Second Am. Compl.[1] ("SAC") ¶¶ 3, 7. The trust deed lists UMS as the lender and MERS as the beneficiary. SAC ¶ 7.

UMS filed articles of dissolution in December 2009. SAC ¶ 10. Two other entities who are not party to this action have claimed an interest in Plaintiffs' loan: Countrywide Home Loan, Inc. ("Countrywide") and Federal Home Loan Mortgage Corporation ("Freddie Mac"). SAC ¶ 29. Freddie Mac claims to own Plaintiffs' loan on its website. SAC ¶¶ 30, 31. There have been

---

[1] Plaintiffs filed their First Amended Complaint in state court.

no assignments recorded between UMS, Countrywide, and Freddie Mac. *Id.*; SAC ¶ 36. BOA is only a loan servicer and does not own Plaintiffs' loan. SAC ¶ 32.

In September 2009, Plaintiffs applied to BOA for a loan modification. SAC ¶ 39. BOA approved Plaintiffs for a three-month trial period plan ("TPP") and told them that complying successfully with this plan would lead to a final loan modification. *Id.* BOA represented to Plaintiffs that they would receive a permanent loan modification if they complied with the TPP and information provided on their modification application continued "'to be true in all material respects[.]'" SAC ¶ 55 (quoting letter from BOA to Plaintiffs, Ex. 11 to SAC). Pursuant to the TPP, Plaintiffs began to make reduced trial payments in March 2010. *Id.* During the course of the TPP, BOA added late fees and interest to Plaintiffs' account. *Id.* After the three-month trial period, Plaintiffs did not hear from BOA. They continued to make the reduced trial payments prescribed by the TPP after the three-month period ended. *Id.*

In April 2011, BOA refused Plaintiffs' payment and informed them that their house would be sold. SAC ¶ 40. BOA refused to accept any further payments. SAC ¶ 40. Because Plaintiffs had continued to make timely payments at the reduced TPP amount, they contend that they are not in default on the loan. *Id.*

On March 30, 2011, MERS executed an assignment of the trust deed to BOA and BOA appointed RTC as successor trustee. SAC ¶¶ 11, 12. The appointment of successor trustee was recorded on April 1, 2011. SAC ¶ 12. On March 30, 2011, RTC issued a Notice of Default and Election to Sell ("NOD"). SAC ¶ 13. The NOD does not include contact information for the Oregon State Bar and other information required by ORS §§ 86.735, 86.745, and 86.755. SAC ¶ 43.On April 8, 2011, Plaintiffs, through their attorney, sent a letter to RTC informing it of legal defects with the non-judicial foreclosure. SAC ¶ 48.

Page 3 – OPINION AND ORDER

On August 24, 2011, Plaintiffs filed suit in Washington County Circuit Court to stop the foreclosure. Dkt. 1-1. On September 7, 2011, Plaintiffs filed their First Amended Complaint. Dkt. 1-2. After Defendants removed the case to this court, Dkt. 1, Plaintiffs filed their SAC on November 8, 2011. Dkt. 8. In their SAC, Plaintiffs assert ten claims for relief: Five claims of wrongful foreclosure, two claims for unlawful debt collection under Oregon and federal law, a claim for violation of Oregon's Unfair Trade Practices Act, a claim for injunctive relief and a claim for declaratory relief. Defendants has moved to dismiss. Dkt. 9.

## STANDARDS

A motion to dismiss under Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim." *Conservation Force v. Salazar*, 646 F.3d 1240, 1242 (9th Cir. 2011) (internal quotation marks and citation omitted). To survive "a motion to dismiss, a complaint must contain sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Services, Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)).

## DISCUSSION

**A.    Pleading Equity**

Defendants begin by arguing that Plaintiffs' first, second, third, fourth, fifth, ninth, and tenth claims sound in equity and Plaintiffs have failed to adhere to a "basic principle[] of equity": "he who seeks equity must do equity." Defs.' Mem. at 10 (quoting *Jensen v. Probert*, 174 Or. 143, 149 (1944)). In particular, Defendants argue that the court must dismiss Plaintiffs' equity claims because "the claims are barred by [P]laintiffs' failure to plead the ability to tender the amount due on the [l]oan. Plaintiffs are not eligible for equitable relief because they are not prepared to do equity as required." Defs.' Mem. at 10. In effect, Defendants argue that to state

equitable claims for relief, Plaintiffs must plead that they are able and willing to tender that amount due on the loan.[2]

The court disagrees. The extent to which Plaintiffs must prove that they are capable of equity is balanced against the degree of equity they seek. *See* D. Dobbs, LAW OF REMEDIES § 2.4(5) (2nd ed. 1993) (discussing balancing equities); *Hickman v. Six Dimension Custom Homes, Inc.*, 273 Or. 894, 898 (1975) ("Courts balance the equities between the parties in determining what, if any, relief to give."). In this instance, "Plaintiffs do not claim a right to retain ownership (forever or otherwise) of property for which they have not paid." Pls.' Resp. at 15. Plaintiffs' requested injunction seeks only to enjoin Defendants from non-judicially foreclosing on Plaintiffs' property.[3] Thus, Defendants may still bring a judicial foreclosure or an action on the note to recover the security or the amount due on the note. *See BarclaysAmerican / Financial, Inc. v. Boone*, 96 Or. App. 635, 638 (1989) ("there is nothing in the [OTDA] or its underlying policy that prohibits a trustee from abandoning a non-judicial foreclosure and pursuing another remedy"). Plaintiffs are not required to plead the ability to do more equity than they seek.

---

[2] The following exchange occurred at oral argument on January 25, 2012:

> THE COURT: Just to make sure I understand what defendants' position is, if . . . plaintiffs are seeking some type of equity from the court, they must plead that they were fully prepared to cure in fault, and nothing short of that would be an acceptable pleading?
>
> MS. FRENCH: Yes, Your Honor, I believe so, because that's what your option is under this Oregon Trust Deed Act[.] Transcript at 32.

[3] Plaintiffs have not brought claims to quiet title or rescind the note or trust deed. Several of the Oregon Supreme Court cases discussing the maxim that "he who seeks equity must do equity" cited by Defendants concern rescission and title to real property. *See* Defs.' Mem. at 10 (citing *Bollenback v. Continental Casualty Co.*, 243 Or. 498 (1966) (action to rescind contract); *Gaffi v. Burns*, 278 Or. 327 (1977) (action seeking specific performance); *Jensen v. Probert*, 174 Or. 143 (1944) (action to remove cloud on title)). Defendants cite to no case or statute – and the court is aware of none – that states that plaintiffs must plead the ability to tender the amount due on the note in order to state a claim for equitable relief based on the OTDA.

Page 5 – OPINION AND ORDER

Accordingly, at least at the pleading stage, Plaintiffs need not allege that they have tendered the full amount due on the note in order to "do equity" under the circumstances of this case.

In addition, if the court were to accept Defendants' argument, it would effectively prevent borrowers from challenging the legality of non-judicial foreclosure unless they could tender the amount due on the note. The OTDA does not provide for such a hurdle and the maxims of equity do not suggest that such a hurdle is appropriate. *See Smith v. Hickey*, 188 Or. 539, 543, *reh'g denied*, 216 P.2d 268 (1950) ("Equity acts only in furtherance of justice."). On the contrary, while the OTDA is designed to create convenience for creditors, its "strict statutory rules [are] designed to protect the" borrower. *Staffordshire Inv., Inc. v. Cal-Western Reconveyance Corp.*, 209 Or. App. 528, 542 (2006). A pleading requirement that would effectively immunize creditors and trustees from the OTDA's "strict statutory rules" is wholly inconsistent with the OTDA's "well-coordinated statutory scheme." *Id.*

## B.   Ability to Cure Default

Defendants next argue that under "Oregon law . . . there is no claim for wrongful foreclosure unless a plaintiff can establish the ability to cure or outbid the highest bidder at a foreclosure sale." Defs.' Mem. at 11. To support this argument, Defendants cite to several cases, including *Domingo v. Anderson*, 138 Or. App. 521, (1996), *aff'd in part and rev'd in part on other grounds*, 325 Or. 385 (1997), *Stations West, LLC v. Pinnacle Bank of Oregon*, No. 06-1419-KI, 2007 WL 1219952 (D. Or. April 23, 2007), and *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034 (9th Cir. 2011).

The cases cited by Defendants do not establish that Plaintiffs must plead the ability to cure a default before contesting the authority of Defendants to conduct a non-judicial foreclosure under the OTDA. Instead, the cases that Defendants reply upon address the remedies available to

Page 6 – OPINION AND ORDER

borrowers *after* an allegedly defective foreclosure sale. Plaintiffs' wrongful foreclosure, injunctive relief, and declaratory judgment claims are not premised on an allegedly defective foreclosure sale. They are, rather, intended to demonstrate that Defendants may not conduct the pending non-judicial foreclosure sale. No statute and no Oregon or federal case cited by Defendants or of which the court is aware holds that a plaintiff must first plead the ability to cure default before contesting the authority of a defendant to use the non-judicial foreclose procedures set forth in the OTDA.

**C.     MERS as Beneficiary**

Defendants next challenge Plaintiffs' first, second, and third claims by arguing that MERS is the beneficiary of Plaintiffs' trust deed and, therefore, MERS properly assigned the trust deed to BOA. Defs' Mem. at 13-22. For the reason set forth in *James v. ReconTrust Co.*, --- F.Supp.2d ---, No. 3:11-cv-324-ST, 2012 WL 653871 (D. Or. Feb. 29, 2012), the court finds that MERS is not the beneficiary of Plaintiffs' trust deed. Nonetheless, the court grants Defendants' motion to dismiss against Plaintiffs' first and second claims for relief because Plaintiffs fail to state a cognizable legal theory why MERS may not act as an agent for the real beneficiary if and when authorized to do so. Defendants' motion to dismiss is denied as to Plaintiff's third claim for relief, however, for the reasons stated below.

**1.   First claim for relief**

Plaintiffs' first claim for relief alleges that MERS lacked agency authority to assign the trust deed. Plaintiffs advance two reasons: First, they argue that there "is no evidence that [UMS] was a member of MERS on March 30, 2011," the day that MERS executed the assignment of the trust deed. Because UMS was not a member of MERS on March 30, 2011, Plaintiffs argue, MERS could not have been acting as UMS's agent and, therefore, the assignment of the deed of

Page 7 – OPINION AND ORDER

trust "was legally meaningless and could convey nothing." SAC ¶ 24. Later in the complaint, however, Plaintiffs allege that Countrywide and Freddie Mac acquired ownership of the loan "long before" before March 30, 2011. SAC ¶¶ 29-31. The trust deed provides that MERS is the nominee for the "Lender and Lender's successors and assigns." Dkt. 1-1, pg. 18. Plaintiffs have not pled any facts to suggest that MERS was not properly acting as an agent for either Countrywide or Freddie Mac on March 30, 2011.[4]

Second, Plaintiffs' argue that the trust deed does not grant MERS agency authority to act on behalf of the lender or its successors. The court disagrees. The trust deed clearly states that MERS is the "nominee" for the lender and it successors and assigns. Even though MERS was not the beneficiary of Plaintiffs' trust deed, it may act as the agent for the real beneficiary. *James*, 2012 WL 653871 *18 n.20. Plaintiffs first claim for relief is dismissed.

**2. Second claim for relief**

In their second claim for relief, Plaintiffs argue that Defendants BOA and RTC lack standing to foreclose. With respect to BOA, Plaintiffs argue that it is "nothing more than the servicer of Plaintiff[s'] loan[.]" SAC ¶ 32. BOA, therefore, "has no standing . . . to proceed with this non-judicial foreclosure." *Id.* The OTDA, however, does not prohibit an agent from acting on behalf of the noteholder and beneficiary. *James*, 2012 WL 653871 *18 n.20. As servicer of

---

[4] Even if Plaintiffs could prove that MERS was not an agent of the real beneficiary on March 30, 2011, Plaintiffs' first claim provides no basis for relief. Transfers of the note automatically assign the trust deed by operation of law and without formal, written assignments. *First Nat'l Bank of Oregon v. Jack Mathis Gen. Contractor*, 274 Or. 315, 321 (1976). Thus, even if it were true that the written assignment executed on March 30, 2011, was "legally meaningless," the trust deed was, all the same, validly assigned to the current noteholder when it received the note. Of course, pursuant to ORS § 86.735(1), the trustee or the beneficiary must record written assignments prior to conducting a non-judicial foreclosure. *See James*, 2012 WL 653871 at *18-21. But ORS § 86.735(1) only requires recording; it does not provide that assignments are ineffective if they are not written and recorded. Plaintiffs address the recording requirement in their third claim for relief.

Page 8 – OPINION AND ORDER

Plaintiffs' loan, BOA may, in an agency capacity, appoint a successor trustee and record notice of default. *See* 3 Am. Jur. 2d Agency § 18 ("Generally, a person may appoint an agent to do the same acts and to achieve the same legal consequences by the performance of an act as if he or she had acted personally"); *see also* ORS § 86A.175(1) (providing that mortgage servicers "may service or collect" a mortgage loan in their own name or in the "name of the lender, note owner, note holder or other holder of an interest in the note").

In addition, RTC is the trustee. Its power to non-judicially foreclose is governed by the OTDA. *See* ORS §§ 86.710, 86.720, 86.735. Plaintiffs do not allege any facts in the second claim for relief to suggest that RTC is not the trustee. Accordingly, Plaintiffs' second claim for relief is dismissed.

### 3. Third claim for relief

Plaintiffs' third claim for relief alleges that not all assignments of the trust deed have been properly recorded. ORS § 86.735(1) requires the recording of "any assignments of the trust deed by the trustee or the beneficiary" before the trustee may non-judicially foreclose. Plaintiffs allege that UMS assigned the note and trust deed to Countrywide and that the assignment was not recorded. SAC ¶¶ 29-30. They also allege that Freddie Mac acquired ownership of the note and that assignment was not recorded. SAC ¶ 31. As explained in *James*, 2012 WL 653871 *18-21, transfers of the note cause an assignment of the trust deed by operation of law. Plaintiffs have stated a claim for relief pursuant to ORS § 86.735(1).

## D.    Default

Until May 2010, Plaintiffs were current on their loan. SAC ¶ 39. In March 2010, Plaintiffs began to make the trial payments pursuant to the TPP sent to them by BOA. SAC ¶ 39;

Dkt. 8 at 55-56.[5] After the three-month TPP period had elapsed, Plaintiffs continued to make trial payments because "they heard no further word from [BOA] on the loan modification status[.]" *Id.* In their fourth claim for relief, Plaintiffs contend that they are not in default on their loan because they have timely made all payments required by BOA and, therefore, Defendants may not foreclose.[6] In their motion to dismiss, Defendants argue that Plaintiffs' fourth claim fails because Plaintiffs defaulted on the loan. First, they argue that Plaintiffs have failed to allege that the TPP is binding because Plaintiffs fail to attach the third page of the TPP. Defs.' Mem. at 23. Second, they argue that even if the TPP was binding, it was for an "expressly limited duration": Plaintiffs do not allege "that [BOA] modified their loan obligations beyond the three-month trial period, and nowhere in the numerous exhibits attached to the [c]omplaint do they include any documentation that would support such a claim." Defs.' Mem. at 22-23.

Plaintiffs' have sufficiently alleged that BOA and Plaintiffs entered into the TPP. Plaintiffs' complaint attaches enough pages of the alleged TPP to demonstrate that BOA offered a TPP. Dkt. 8 at 55-56. In addition, the complaint sufficiently alleges that Plaintiffs made and BOA accepted trial payments according to its terms. SAC ¶ 39. At this stage in the proceedings, those allegations are sufficient to demonstrate that the parties entered into the TPP.

---

[5] Plaintiffs attached copies of the first two pages of the TPP to the second amended complaint. *See* Dkt. 8 at 55-56. The court may consider documents attached to the complaint when deciding a Rule 12(b)(6) motion. *United States v. Corinthian Colleges*, 655 F.3d 984, 999 (9th Cir. 2011).

[6] Plaintiffs do not expressly plead that Defendants breached the TPP by failing to offer them a "Home Affordable Modification Agreement" at the close of the trial period. They merely "deny that they are in default as to any of the Defendants." SAC ¶ 40. The court, therefore, does not interpret Plaintiffs' fourth claim for relief to be a claim for breach of contract based on the provision of the TPP providing that if Plaintiffs were in compliance with the TPP they would receive a "Home Affordable Modification Agreement." Dkt. 8 at 55; *see e.g. Wigod v. Wells Fargo Bank, N.A.*, --- F.3d ---, 2012 WL 727646 (7th Cir. Mar. 7, 2012).

Page 10 – OPINION AND ORDER

Defendants are correct, however, that by its own terms, the TPP unambiguously lasted for a limited duration. The TPP states that it began on the date of the first trial payment and ended on "the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due . . . or (ii) termination of this Plan[.]" Dkt. 8 at 56. Because the court finds that the TPP unambiguously states that it lasts for a limited duration, the court may not resort to consideration of extrinsic evidence, such as the parties' "course of performance," Pls.' Resp. at 33, to determine the duration of the TPP. *Yogman v. Parrott*, 325 Or. 358, 361 (1997) ("If the provision is clear, the analysis ends."). Furthermore, Defendants are also correct that the TPP does not permanently modify the terms of Plaintiffs' loan. Consequently, by continuing to make trial payments after the termination of the TPP, Plaintiffs appear to have defaulted on their loan. Plaintiffs' fourth claim for relief is dismissed.[7]

### E.     Notice of Default

ORS § 86.790(3) provides:

> At any time after the trust deed is executed, the beneficiary may appoint in writing another qualified trustee. If the appointment of the successor trustee is recorded in the mortgage records of the county or counties in which the trust deed is recorded, the successor trustee shall be vested with all the powers of the original trustee.

BOA appointed RTC as successor trustee in a document that was executed on March 30, 2011, notarized on March 31, 2011, and recorded on April 1, 2011. SAC ¶¶ 43-44; Dkt. 8 at 44-45. ORS § 86.735(3) provides that a trustee may conduct a non-judicial foreclosure if the

---

[7] Plaintiffs' alleged timely remittance of the trial payments does not provide a basis for Plaintiffs to claim that BOA permanently modified Plaintiffs' loan. *See* Pls.' Resp. at 33 ("Plaintiffs . . . continued to make [trial] payments in the belief that their loan had been modified"). Plaintiffs do not allege that BOA extended an offer to permanently modify Plaintiffs' loan. Nor do Plaintiffs allege that BOA suggested any terms for a permanent loan modification agreement. Moreover, as stated in footnote 6, above, Plaintiffs have not brought a breach of contract claim based on BOA's failure to offer them a permanent loan modification.

"trustee or beneficiary has filed for record in the county clerk's office in each county where the trust property, or some part of it, is situated, a notice of default containing the information required by ORS 86.745 and containing the trustee's or beneficiary's election to sell the property to satisfy the obligation[.]" RTC executed the NOD on March 30, 2011. SAC ¶ 43; Dkt. 8 at 46-47. The NOD was notarized on March 31, 2011, and recorded on April 1, 2011, after the appointment of successor trustee. *Id.*

In their fifth claim for relief, Plaintiffs allege that the NOD is defective because RTC did not have authority to execute the NOD on March 30, 2011 because it did not become vested with the powers of the trustee until *after* the appointment of successor trustee was recorded on April 1, 2011. SAC ¶¶ 44-46. Defendants argue that even though RTC executed the NOD before the appointment of successor trustee was recorded, the appointment of successor trustee was recorded *before* the NOD was recorded. Defs.' Mem. at 25.

The crux of the parties' dispute on this issue turns on the meaning of the word "powers" in the phrase "all the powers of the original trustee." ORS § 86.790(3). On the one hand, the words "powers" in this phrase might refer only to the statutory powers conferred by the OTDA, such as, for example, the power to reconvey the estate to the grantor, ORS § 86.720(1), record affidavits of compliance, ORS § 86.750(3)-(4), or conduct a non-judicial foreclosure sale, ORS § 86.755. If "powers" means only those powers conferred by the OTDA, Plaintiffs' claim would fail because the authority to execute the NOD is not a "power" conferred on a trustee by the OTDA. On the other hand, "powers" might refer not only to the statutory powers conferred by the OTDA, but also to the authority of a trustee to conduct ordinary, non-statutory activities with respect to a particular trust deed, such as drafting and executing notices, affidavits, and other documents. If "powers" has this broader meaning, then Plaintiffs' have stated a valid claim

Page 12 – OPINION AND ORDER

because RTC would not have acquired the authority to draft and execute the NOD until the appointment of successor trustee was recorded.

To determine which interpretation is correct requires the court to interpret ORS § 86.790(3). Under Oregon law, to determine the meaning of a statute, the court must begin by examining its text and context. *State v. Gaines*, 346 Or. 160, 171 (2009). When the interpretation involves a particular term, the court considers "the meaning of that term and the context in which the legislature used it." *Hopkins v. SAIF Corp.*, 349 Or. 348, 356 (2010). If the statute does not define the term, Oregon courts may "look to the dictionary to determine [its] ordinary meaning." *State v. Baker-Krofft*, 348 Or. 655, 661 (2010).

The OTDA does not define "powers." The statutory context, however, suggests that the legislature intended that "powers" refers only to those powers conferred on the trustee by the OTDA. ORS § 86.795 governs the compensation of the trustee. It specifically indicates that the "powers and duties" of the trustee are set forth by the OTDA: "The charge of a trustee for the performance of *powers* and duties of foreclosure by advertisement and sale *imposed under ORS 86.705 to 86.795* shall not exceed 50 percent of the compensation allowable to an executor or administrator[.]" (Emphasis added.) This interpretation is consistent with definition of "power" in BLACK'S LAW DICTIONARY 1288 (Bryan A. Garner ed. 2009): "Power" means the "legal right or authorization to act or not act[.]"

The court concludes, therefore, that "powers" in ORS § 86.790(3) means only those powers conferred by the OTDA. Because the OTDA does not govern the drafting, signing or execution of the NOD, RTC had the authority to execute the NOD on March 30, 2011, after BOA appointed it successor trustee but before the appointment of a successor trustee was recorded on April 1, 2011. The OTDA does, however, govern who may record the NOD. As

Page 13 – OPINION AND ORDER

noted above, ORS § 86.735(3) requires either the trustee or the beneficiary to record the NOD. As Defendants demonstrate, however, the appointment of a successor trustee was recorded on April 1, 2011, before the NOD was recorded later that same day. Accordingly, RTC was vested with power to record the NOD before the NOD was recorded.[8] Plaintiffs' fifth claim for relief, therefore, is dismissed.[9]

### F.     Unlawful Debt Collection

Defendants' contend that Plaintiffs' sixth and seventh claims fail to state claims for relief under Oregon's Unlawful Debt Collection Practices Act ("UDCPA"), ORS § 646.639, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq*. Defs.' Mem. at 27-28. They advance three reasons. First, Defendants maintain that Plaintiffs' claims are premised "solely on the assumption that the foreclosure proceedings are unlawful." *Id.* at 27. Because, however, "the foreclosure proceedings are wholly valid and warranted by [P]laintiffs' default . . . [P]laintiffs do not state a cognizable claim for relief." *Id.* at 27-28. Second, they maintain that Plaintiffs have failed to plead that RTC "took any action after receiving the August 8, 2011 letter that serves as the basis for [their] claim[s.]" *Id.* at 28. Finally, Defendants maintain that foreclosing a trust deed is not the collection of a debt under either the UDCPA or FDCPA. *Id.*

#### 1.  UDCPA

Under the UDCPA, it is unlawful to "[a]ttempt to or threaten to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist[.]"

---

[8] The record does not disclose who recorded the NOD and, in fact, the NOD may have been recorded by the beneficiary or an agent of the beneficiary rather than by RTC.

[9] Defendants also argue that the court should dismiss Plaintiffs' contentions in the fifth claim for relief relating to the "notice to tenants." SAC ¶ 43; Defs.' Mem. at 25. Plaintiffs do not address this argument in their response. The court has reviewed the documents and agrees with Defendants that they are in the form prescribed by the OTDA.

ORS § 646.639(2)(k). In Plaintiffs' sixth claim for relief, they appear to allege that RTC was attempting to collect a debt. SAC ¶ 48. They further allege that in doing so RTC "is seeking to enforce a right or remedy under the circumstances when it knows or should know that the right or remedy does not exist[.]" *Id*. Plaintiffs cite to a letter from their counsel to RTC, dated August 8, 2011, attached as Exhibit 10 to the SAC, which lists alleged violations of the OTDA. *Id*. This letter, Plaintiffs claim, demonstrates that RTC had knowledge that the right or remedy on non-judicial foreclosure does not exist. Although they do not precisely spell it out, Plaintiffs' sixth claim for relief appears to claim that RTC violated the UDCPA by recording an NOD when RTC had knowledge that it had no right to non-judicially foreclose.

      Plaintiffs have failed to allege that RTC sought to enforce a right or remedy that does not exist when it filed the NOD. ORS § 86.735 permits RTC to non-judicially foreclose the trust deed if: (1) the trust deed and certain assignment are recorded; (2) the grantor has defaulted; (3) the trustee or beneficiary has recorded a NOD; and (4) no judicial action has been taken to recover the debt. The second, third, and fourth conditions have been satisfied: Plaintiffs are in default; the NOD has been properly recorded; and there is no evidence of any judicial action to recover the debt. Although, as explained above, Plaintiffs have stated facts sufficient to claim that the first condition has not *yet* been satisfied, ORS § 86.735 does not require that assignments of the trust deed be recorded *before* the trustee or the beneficiary records the NOD; that statute requires only that such recording occurs before a trustee may conduct a non-judicial foreclosure sale. At the time that RTC recorded the NOD, therefore, the remedy of non-judicial foreclosure existed because the trustee could have still recorded all required assignments. Plaintiffs, therefore, have not stated a claim for relief under the UDCPA, and Plaintiffs' sixth claim for relief is dismissed.

Page 15 – OPINION AND ORDER

### 2.  FDCPA

It is a violation of the FDCPA to take or threaten to take "any nonjudicial action to effect dispossession or disablement of property if . . . there is no present right to possession of the property claimed as collateral through an enforceable security interest[.]"15 U.S.C. § 1692f(6)(A). Plaintiffs' seventh claim is based on this statute. Although the claim appears to be asserted only against RTC, Plaintiffs do not allege that RTC took any action. Instead, they allege that "BAC [BOA] is not the owner of the loan, has no right to possession of the Property, yet continues to threaten a non-judicial foreclosure to dispossess Plaintiffs of their home." SAC ¶ 52. The FDCPA, however, does not apply to mortgage loan servicers, such as BOA. *Blair v. Bank of America N.A.*, No. 3:10-cv-946-SI, 2012 WL 2012 WL 860411 *9 (D. Or. Mar. 13, 2012). Because Plaintiffs' seventh claim fails to allege that RTC took any action and because the FDCPA does not apply to BOA, it is dismissed.

**G.    Unfair Trade Practices**

In their eight claim for relief, Plaintiffs allege that BOA violated Oregon's Unfair Trade Practices Act ("UTPA"), ORS §§ 646.608(1)(k) and 646.608(1)(q), by stating that Plaintiffs would receive a permanent loan modification if they successfully completed the TPP. SAC ¶ 55. Furthermore, Plaintiffs allege that BOA denied the TPP without reason. *Id.* Plaintiffs seek "an order compelling [BOA] to grant Plaintiffs a permanent loan modification" and punitive damages. SAC ¶ 56. Defendants argue that Plaintiffs' UTPA claim fails because Plaintiffs have not proved that the damages they allege were "caused by the alleged wrongful conduct." Defs.' Mem. at 29.

To state a claim for relief under the UTPA, a private party must plead:  "(1) a violation of ORS 646.608(1); (2) causation ('as a result of'); and (3) damage ('ascertainable loss')." *Feitler v.*

*Animation Celection, Inc.*, 170 Or. App. 702, 708 (2000) (quoting ORS § 646.638(1)). Pleading an ascertainable loss of money or property is an essential element of a UTPA claim. *Creditors Protective Ass'n, Inc. v. Britt*, 58 Or. App. 230, 233 (1982) ("a plaintiff must plead and prove an ascertainable loss of money or property"). Plaintiffs have not specifically pled *any* damages resulting from BOA's alleged violations of the UTPA. Plaintiffs' complaint merely states that BOA "denied their loan modification"; they do not allege that the denial of a permanent loan modification resulted in any harm to them. At present, Plaintiffs' home has not been sold. Moreover, Plaintiffs have not alleged that a permanent loan modification would have resulted in a reduction in the total amount that they owed. Finally, the mere fact that Plaintiffs are in default on their loan is not, in itself, a loss of money or property. Plaintiffs' eighth claim for relief is, therefore, dismissed.

### H.     Injunctive and Declaratory Relief Claims

In their ninth claim for relief, Plaintiffs request a preliminary injunction. Defendants argue that Plaintiffs have failed to meet the standard for a preliminary injunction. Defs.' Mem. at 26. A plaintiff seeking a preliminary injunction must show: (l) that he is likely to succeed on the merits; (2) that he is likely to suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in his favor; and (4) that an injunction is in the public interest. *Winter v. Natural Resources Defense Council*, 555 U.S. 7, 20 (2008). Plaintiffs' complaint sufficiently states facts and law to satisfy each of these elements. Plaintiffs have not yet moved for a preliminary injunction; the court will more thoroughly consider the suitability of a preliminary injunction if and when Plaintiffs move for a preliminary injunction.

In their tenth claim for relief, Plaintiffs request declaratory relief. Defendants argue that "the claim for declaratory relief asserts no new legal basis." Defs.' Mem. at 27. Because

Plaintiffs' third claim for relief remains viable, Plaintiffs have stated a claim for declaratory relief.

## CONCLUSION

Defendants' motion to dismiss, Dkt. 9, is GRANTED IN PART AND DENIED IN PART. Plaintiffs first, second, fourth, fifth, sixth, seventh, and eighth claims for relief are dismissed without prejudice, and Plaintiffs may file a third amended complaint within 14 days from the date of this order if Plaintiffs believe that a further amendment will cure the deficiencies identified in this Opinion and Order. Defendants' motion to dismiss is denied with regard to Plaintiffs' third, ninth, and tenth claims for relief.

IT IS SO ORDERED

Dated this 19th day of March, 2012.

/s/ Michael H. Simon
_____
Michael H. Simon
United States District Judge